# Third District Court of Appeal

## State of Florida

Opinion filed October 24, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1787
Lower Tribunal No. 12-1352
_____

**Deven Brown,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Richard L. Hersch, Judge.

Carlos J. Martinez, Public Defender, and Jonathan Greenberg, Assistant Public Defender, for appellant.

Pamela Jo Bondi, Attorney General, and Keri T. Joseph and Marlon J. Weiss, Assistant Attorneys General, for appellee.

Before SCALES, LUCK and LINDSEY, JJ.

SCALES, J.

Deven Brown appeals the trial court's July 13, 2016 order revoking Brown's juvenile sanctions and sentencing Brown, as an adult, to a term of twenty-five years in prison. We reverse the order and remand for new proceedings because, in revoking Brown's juvenile sanctions, the trial court: (i) made findings outside of the scope of the charging document, thereby depriving Brown of a proper notice of the basis for revoking his juvenile sanctions; and (ii) relied exclusively upon inadmissible hearsay.

**I. Relevant Facts and Procedural History**

*A. Early background*

Brown was born on September 5, 1994. His busy criminal activities began with a trespass in 2008. By the age of fifteen he was having multiple run-ins with the law. The record indicates that in 2009 and 2010, alone, Brown was arrested seven times. The charges included aggravated assault with a deadly weapon, battery, and possession of a weapon on school property and aggravated assault. Brown's eventual plea agreement, described below, incorporated the disposition of two of these early charges, from cases J09-5114A and J10-1212.

*B. Plea agreement in the instant case*

Brown's criminal activities escalated and, on December 22, 2011, the seventeen-year-old Brown used a firearm in his attempt to kill Trey Eddie. Brown was charged as an adult (in the instant case, F12-1352) with attempted first degree

murder with a firearm, which is a life felony pursuant to section 775.087 of the Florida Statutes. Despite Brown's ineligibility to receive juvenile sanctions,[1] in August of 2012, the State and Brown entered into a plea agreement that allowed Brown to avoid the prosecution of him as an adult. Brown pleaded guilty to attempted first degree murder with a deadly weapon and was committed to a Department of Juvenile Justice ("DJJ") Maximum Risk Juvenile Correctional facility for three years, followed by conditional release until Brown turned twenty-two. This sentence was to run concurrently with adjudications on J09-5114A and J10-1212.

Citing to section 985.565(4)(c) of the Florida Statutes,[2] the written plea agreement expressly states that, if Brown proves not to be suitable for juvenile

_____

[1] Because Brown previously had been adjudicated delinquent for a felony (aggravated assault), Brown was not eligible for juvenile proceedings. §985.565(4)(a)3., Fla. Stat. (2016).

[2] This section reads in its entirety as follows:

> *Adult sanctions upon failure of juvenile sanctions.* – If a child proves not to be suitable to a commitment program, juvenile probation program, or treatment program under paragraph (b), the department shall provide the sentencing court with a written report outlining the basis for its objections to the juvenile sanction and shall simultaneously provide a copy of the report to the state attorney and the defense counsel. The department shall schedule a hearing within 30 days. Upon hearing, the court may revoke the previous adjudication, impose an adjudication of guilt, and impose any sentence which it may lawfully impose, giving credit for all time spent by the child in the department. The court may also classify the child as a youthful offender under s. 958.04, if appropriate. For purposes of

3

sanctions, Brown would be subject to any adult sanction that may lawfully be imposed for attempted first degree murder with a deadly weapon. At Brown's plea colloquy, the trial court admonished Brown as follows: "[I]f you violate the program, . . . then you come back here, and if . . . I find that you willfully and substantially violated the conditions of your commitment, then you're looking at . . . life in prison with a 25-year minimum mandatory."

*C. Post-plea agreement juvenile arrests and Brown's release from DJJ custody*

Shortly after entering the plea deal, Brown was charged on August 28, 2012, with aggravated battery on a fellow inmate at a juvenile detention center (case J12-3539B). The arrest affidavit recounts that, after a verbal altercation, Brown (and others) "jumped" the victim who sustained facial injuries in the attack. Then, on September 3, 2012, Brown again was charged with battery for attacking a fellow inmate, punching the victim after another verbal altercation (case J12-3636B).

While these charges were pending,[3] Brown's three-year commitment expired, and, per the plea agreement, the twenty-year-old Brown was

---

this paragraph, a child may be found not suitable to a commitment program, community control program, or treatment program under paragraph (b) if the child commits a new violation of law while under juvenile sanctions, if the child commits any other violation of the conditions of juvenile sanctions, or if the child's actions are otherwise determined by the court to demonstrate a failure of juvenile sanctions.

§ 985.565(4)(c), Fla. Stat. (2016).

released from DJJ custody, but remained on conditional release under DJJ's supervision.

*D. The February 2015 felony arrest (F15-4110A) and the State's request for disposition hearing and revocation of juvenile sanctions*

On February 25, 2015, shortly after his release from DJJ custody, but while still on conditional release under DJJ's supervision, Brown was charged with another new offense: an attempted second-degree murder with a firearm that allegedly had occurred on February 21, 2015 (case F15-4110A). Months later, in December of 2015, the State, pursuant to section 985.565(4)(c), filed a request in case F12-1352 (the instant case that resulted in the plea bargain) asking the trial court to set a disposition hearing to consider revoking Brown's juvenile sanctions. The State's motion relied *exclusively* on the February 2015 arrest as support for its general allegation that Brown was not suitable for a DJJ program. The State's motion was accompanied by an affidavit from Brown's case manager that simply recounted facts from the arrest affidavit associated with Brown's February 2015 arrest, and concluded with a statement that Brown "has proved himself not to be suitable for the treatment program of DJJ."

Prior to the disposition hearing, the State filed a motion and accompanying memorandum of law arguing that Brown's juvenile sanctions should be revoked,

---

[3] The record is unclear as to why the charges in cases J12-3539B and J12-3636B were not adjudicated sooner.

5

and that, consistent with the express provisions of the plea agreement, the trial court should sentence Brown to adult sanctions for the December 2011 crime of attempted first-degree murder with a deadly weapon. While this March 2016 filing extensively documented Brown's arrest history, the State's allegation that Brown was not suitable for a DJJ program was again based *exclusively* on Brown's February 2015 arrest.

*E. The April 8, 2016 disposition hearing and resulting sentence[4]*

On April 8, 2016, the trial court conducted the disposition hearing to determine whether Brown's juvenile sanctions should be revoked. The parties, though, hotly contested the precise issue the trial court would be deciding, and thus, the evidence the trial court could consider.

Brown argued that the scope of the hearing was limited exclusively by the allegations of the "charging document," that is, the DJJ case manager's affidavit that had been filed in conjunction with the December 2015 request for a disposition hearing. As mentioned above, this affidavit alleged only the facts associated with Brown's February 2015 arrest. Brown argued that, because the affidavit's sole allegation was that Brown was not suitable for DJJ supervision due to this arrest, the State, in order to prevail, must prove that Brown, in fact, had

---

[4] While Judge William Thomas accepted the August 2012 plea agreement, Judge Richard Hersch conducted the subsequent disposition hearing.

committed the crime for which he was arrested. Brown argued that, because the charging affidavit was limited, Brown's criminal history – not referenced in the affidavit – was irrelevant.

The State's view of the disposition hearing was far less constrained. The State argued (as it does on appeal) that once a trial court sets a disposition hearing to consider revocation of juvenile sanctions, the trial court may consider any evidence relevant to whether a juvenile is suitable for DJJ supervision, irrespective of the allegations in the charging document.

The trial court adopted the State's view of the disposition hearing's scope and, over Brown's objection, admitted the arrest affidavits in cases J12-3539B, J12-3636D, and F15-4110A.[5] Based on these arrest affidavits, the trial court determined that Brown was not suitable for DJJ supervision. The trial court revoked Brown's juvenile sanctions and sentenced Brown to a prison term of twenty-five years, the minimum mandatory sentence for a first degree felony with the use of a firearm.

Brown timely appealed the trial court's sentence.

**II. Issue on Appeal and Standard of Review**

---

[5] The trial court also admitted into evidence, over Brown's hearsay objection, Brown's "Face Sheet," a document that provides a juvenile's history in the legal system. Among other things, the Face Sheet lists Brown's transgressions dating back to a 2008 trespassing charge and includes references to cases J12-3539B and J12-3636D.

7

In this case of first impression, we are asked to determine whether, at a hearing to revoke juvenile sanctions, a trial court may consider grounds for revocation not asserted in the DJJ charging document. While generally we would review an order revoking juvenile sanctions for an abuse of discretion, see Harris v. State, 898 So. 2d 1126, 1127 (Fla. 3d DCA 2005), in this instance, our review is *de novo* as we undertake an analysis of a question of law. Norvil v. State, 191 So. 3d 406, 408 (Fla. 2016).

**III. Analysis**

While Brown challenges his sentence on two grounds,[6] we reverse on the due process ground and find no merit in Brown's other challenge to the order.

*A. The relevant statute – section 985.565(4)(c)*

The Florida Legislature has provided a specific statutory mechanism for an adult sentencing court to revoke previously imposed juvenile sanctions, so that adult sanctions may be imposed by the sentencing court. § 985.565(4)(c), Fla. Stat. (2016).

Pursuant to this statute, if a child "proves not to be suitable" for juvenile sanctions previously imposed by the court (a commitment program, juvenile probation program or treatment program supervised by DJJ), then DJJ can provide

---

[6] Brown also asserted that, based on his interpretation of language in the plea agreement, the State waived any minimum mandatory sentencing requirements.

the court "with a written report outlining the basis for its objections to the juvenile sanction" (i.e, the charging document) and schedule a disposition hearing before the court. Id. After conducting the disposition hearing, the court, if it finds that the child is not suitable for the previously imposed juvenile sanctions, may revoke the previous adjudication and impose any lawful sentence. Id.

In this statute, the Legislature specifically defines what conduct renders a juvenile not suitable for juvenile sanctions:

(i) when a child commits a new violation of law while under juvenile sanction;

(ii) when a child commits any other violation of the conditions of juvenile sanction; or

(iii) when the child's actions are otherwise determined by the court to demonstrate a failure of juvenile sanction. Id.

B. *Due process requirements for both the charging document and the resulting disposition hearing*

While we have some general guidance from the Florida Supreme Court instructing that proceedings to revoke juvenile sanctions are analogous to probation revocation proceedings, see Jones v. State, 336 So. 2d 1172, 1174-75 (Fla. 1976), there is little case law regarding the scope, parameters and due process requirements of either: (i) DJJ's "written report outlining the basis for its

9

objections to the juvenile sanction," or (ii) the resulting disposition hearing to determine whether juvenile sanctions are suitable, both of which are specifically prescribed by the statute.[7] We do have the benefit, though, of extensive case law in the probation revocation arena, providing that when the State seeks to revoke a defendant's probation, due process requires that notice to the defendant provide a proper and specific basis for the violation. Gray v. State, 170 So. 3d 890, 892 (Fla. 3d DCA 2015). Florida's appellate courts have reversed trial court probation revocation orders when the State's notice of violation has failed to provide the requisite specificity. Burton v. State, 651 So. 2d 793, 794-95 (Fla. 1st DCA 1995) (holding that both affidavit and order of revocation fail to identify with specificity defendant's probation violation); see also DeJesus v. State, 848 So. 2d 1276, 1278 (Fla. 2d DCA 2003) (holding that grounds for probation revocation must be in writing to satisfy due process).

Similarly, Florida's appellate courts have routinely held that a trial court commits reversible error in a probation revocation setting when it admits evidence

---

[7] This Court has provided guidance related to sentencing *after* a trial court has revoked juvenile sanctions. Mirutil v. State, 30 So. 3d 588, 590 (Fla. 3d DCA 2010) (standing for the unremarkable proposition that, in sentencing a defendant whose juvenile sanctions have been revoked already, the sentencing court may not consider new crimes a defendant might have committed notwithstanding that those new crimes might have constituted the basis for the revocation). As the State commendably conceded at oral argument, it appears that, below, the State might have misperceived Mirutil and its lack of applicability to the procedural posture of the instant case.

10

of crimes not charged in the violation notice. <u>Gray</u>, 170 So. 3d at 892 (holding error for trial court to revoke probation upon finding that sexual battery occurred when sexual battery not alleged in affidavit); <u>Thomas v. State</u>, 159 So. 3d 937, 937-38 (Fla. 3d DCA 2015) (holding error for trial court to base probation revocation on failure to complete community service when not alleged in affidavit).

Because we recognize that juvenile sanction revocation proceedings conducted under section 985.565(4)(c) set forth statutory procedures that are analogous to probation revocation procedures under section 948.06 of the Florida Statutes, we see no sound basis for creating and developing a disparate body of due process law for juvenile revocation proceedings. This is true especially in light of the Florida Supreme Court's observation that the revocation of juvenile sanctions is an "identical" situation to that of probation revocation. <u>Jones</u>, 336 So. 2d at 1175.

*C. The instant case*

Against this backdrop, we first look to the charging document in the instant case – DJJ's December 2015 affidavit that represents the statutorily mandated "written report" of DJJ "outlining the basis" for revocation of Brown's juvenile sanctions – to determine what exactly DJJ alleged as the basis for seeking revocation of Brown's juvenile sanctions.

11

DJJ's conclusion that Brown was not suitable for DJJ supervision was supported *exclusively* by allegations related to Brown's 2015 arrest. Hence, DJJ asserted in its charging document merely that Brown had committed "a new violation of law," which is the first of the listed grounds for finding a juvenile not suitable for juvenile sanctions. § 985.565(4)(c), Fla. Stat. (2016). There was no factual allegation in the affidavit suggesting that either of the two other grounds outlined in the statute were implicated: (i) DJJ's affidavit does not suggest that Brown violated some other condition associated with his juvenile sanction, and (ii) the juvenile sanctions imposed on Brown were not "otherwise" determined to have failed. Id.

Notwithstanding the limited subject matter in the charging document, the trial court, at the State's urging, viewed the scope of the disposition hearing as being far broader. The trial court decoupled the disposition hearing from the charging document, considering the entire panoply of evidence probative to the question of whether juvenile sanctions were appropriate for Brown in light of Brown's unprofitable experience under DJJ supervision. Thus the trial court focused not on the actual charges in the DJJ affidavit, but rather, on Brown's history of conduct while under DJJ supervision. In this regard, the trial court considered the arrest affidavits associated not only with Brown's February 2015 arrest, but also his arrest affidavits associated with two incidents in 2012. In

12

revoking Brown's juvenile sanctions, the trial court concluded that, based on the assertions in the arrest affidavits presented to him, Brown was not suited for juvenile sanctions. The charging document, though, provided no notice to Brown that the grounds for revocation were this broad, encompassing conduct beyond his February 2015 arrest.

Had DJJ's charging document adequately alleged that Brown's pattern of conduct – evidenced by his several arrests – demonstrated a failure of juvenile sanctions, then the evidence considered by the trial court at the disposition hearing would have been within the scope of the charging document, thus properly considered by the trial court and sufficient to revoke juvenile sanctions. The conspicuous fact remains, however, that DJJ's charging document did not provide Brown any notice that the basis for revocation of juvenile sanctions would encompass more than his February 2015 arrest. Given the one-dimensional allegation within DJJ's charging document, due process required that the disposition hearing, and evidence admitted at that hearing, should have been limited to whether Brown, by a preponderance of the evidence, committed the violation of law alleged in the charging document.

Finally, there is little doubt that the trial court could have revoked Brown's juvenile sanctions and imposed adult sanctions if the State proved that Brown had committed the offense in DJJ's charging document. We note, though, that the only

13

evidence adduced by the State that Brown had committed this violation was the associated arrest affidavit. Standing alone, this hearsay evidence is not sufficient to establish a violation of law so as to justify revocation. Lewis v. State, 995 So. 2d 1123, 1125 (Fla. 4th DCA 2008) (holding that probation revocation cannot be based solely on hearsay evidence); Azadi v. Spears, 826 So. 2d 1020, 1020 (Fla 3d DCA 2001) (holding that arrest affidavit, as hearsay, does not support pretrial detention order).

## IV. Conclusion

Because the disposition hearing, and the trial court's resulting revocation of Brown's juvenile sanctions, were based on grounds not alleged in DJJ's charging document, we reverse the order on appeal and remand for proceedings consistent with this opinion. On remand, DJJ, if it chooses to do so, may amend its charging document; the resulting disposition hearing shall proceed accordingly.

Reversed and remanded with instructions.