DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**TAVARIS JAMAL EVANS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

Nos. 4D18-3111, 4D18-3113, 4D18-3116 and 4D18-3114

[July 29, 2020]

Consolidated appeals from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Timothy L. Bailey, Judge; L.T. Case Nos. 14-001544CF10A, 14-003350CF10A, 14-003351CF10A and 14-003352CF10A.

Carey Stafford Haughwout, Public Defender, and Nancy Jack, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Marc B. Hernandez, Assistant Attorney General, West Palm Beach, for appellee.

CONNER, J.

In these consolidated appeals, Tavaris Jamal Evans ("Appellant") appeals his convictions and sentences. Appellant, who at the time was a juvenile, was prosecuted as an adult, and after pleading guilty to all charges, was granted juvenile sanctions. Thereafter, upon determining Appellant violated conditional release from a juvenile residential commitment, the trial court further determined the juvenile sanctions imposed were unsuitable, revoked the sanctions, adjudicated Appellant guilty, and resentenced him to prison. Appellant also appeals his designation at sentencing as a violent felony offender of special concern ("VFOSC").

Appellant raises four issues on appeal. We affirm without discussion the trial court's determination that Appellant violated conditional release by committing a new crime. We also determine, without discussion, that

the record does not demonstrate that the trial court erred by not ordering updated reports from the Department of Juvenile Justice ("DJJ") or the Department of Corrections ("DOC"). However, we agree with Appellant's arguments that the trial proceedings below violated due process, and the trial court erroneously designated him as a VFOSC. We reverse Appellant's convictions, sentences, and VFOSC designation, and remand for further proceedings before a different judge.

*Background*

Appellant was a juvenile when he was charged and prosecuted as an adult in four different cases for crimes of (1) burglary of a dwelling and grand theft; (2) robbery by sudden snatching; (3) robbery by sudden snatching and burglary of a conveyance; and (4) armed burglary of a dwelling, grand theft, and grand theft of a firearm. After pleading guilty to the charges, the trial court granted his motion to impose juvenile sanctions, adjudicated him delinquent, and committed him to a level 10 program (the highest and most secure residential program the DJJ operates). After his release from the level 10 program, Appellant was placed on conditional release supervised by the DJJ.

While on conditional release, Appellant was authorized to move to Georgia. Six months after being on conditional release, as allowed by statute, the DJJ filed an affidavit in all four cases alleging that Appellant violated conditional release and that juvenile sanctions were "unsuitable" as evidenced by the fact that Appellant committed a new crime of "theft by taking > 1,500.00" in Cobb County in Georgia.

A violation hearing was conducted. In its opening statement, the State contended that Appellant violated his conditional release when he stole a car in Georgia. If the trial court found him in violation, the State requested a danger hearing, which the State was prepared to do that same day, on the basis of Appellant's four pending cases, prior history, the report of the presentence investigation ("PSI"), and the DJJ.

During cross examination of the probation officer, defense counsel asked whether this was Appellant's first violation on conditional release. The State objected, asserting that direct examination had only gone into the basis of the violation and that there were more questions the State would ask if the proceeding became a revocation hearing and danger hearing. The trial court responded that it was doing everything at this hearing at the same time: the violation, revocation, danger, and sentencing. The State argued the trial court could not take evidence for

2

the violation at the same time as the danger hearing, but the trial court disagreed and the matter proceeded as such.

The State then elicited testimony from the probation officer that, based on the affidavit, the DJJ's position was that Appellant was unsuitable for juvenile sanctions. The State also elicited testimony from the probation officer about Appellant's supervision history, which began when Appellant was nine years old and was referred to a diversion program for two counts of possession of a weapon on school property. Defense counsel objected, arguing this was a prior offense which was not scorable on a score sheet and was inadmissible. However, the State argued, and the trial court agreed, that for purposes of the danger hearing, the prior offense could come in so that the court could analyze the appropriateness of juvenile sanctions. Defense counsel maintained that the trial court could not consider any juvenile priors more than five years old. The trial court responded that in determining whether juvenile sanctions were suitable for Appellant, it wanted to hear the history of his contact with juvenile sanctions. The probation officer then continued, explaining that Appellant was referred a second time to a diversion program three years later after being charged with possessing, making, or attempting to make explosives.

In lieu of the probation officer testifying further, the parties then stipulated that Appellant's complete history with the juvenile system was included in one of the court files, as well as the PSI completed for the original sentencing. The State then elicited testimony that the probation officer believed that Appellant was a danger based on Appellant's history of supervision with the juvenile justice system, his allegations in the four underlying cases, and the new crime being committed within six months of being released from the level 10 program.

At the conclusion of the hearing the trial court announced that it found the State proved Appellant committed a new crime while on conditional release, Appellant was a danger, and the juvenile sanctions previously imposed by the trial court were unsuitable. The trial court revoked the juvenile sanctions, denied Appellant's request to sentence him as a youthful offender, determined Appellant was a VFOSC, and sentenced him to a 10-year mandatory minimum prison sentence for the armed burglary of a dwelling charge and five years in prison for each count in the other cases. The trial court entered a written order designating Appellant as a VFOSC.

Appellant gave notice of appeal.

*Appellate Analysis*

*Due Process Violation*

We first address Appellant's argument that the trial court violated his due process rights when it revoked juvenile sanctions for reasons not listed in the DJJ's affidavit of unsuitability. Specifically, Appellant contends that where the document asserting he was unsuitable for juvenile sanctions alleged only a new crime as grounds, the trial court improperly considered his prior adjudications and supervision history as grounds for revoking juvenile sanctions. Appellant asserts he was not provided notice that the grounds for revoking juvenile sanctions would encompass anything beyond the new crime.

An order revoking juvenile sanctions is generally reviewed for an abuse of discretion. *Brown v. State*, 260 So. 3d 1101, 1104 (Fla. 3d DCA 2018). However, to the extent our review involves the interpretation of statutes, our review is de novo. *Robinson v. State*, 205 So. 3d 584, 590 (Fla. 2016).

Section 985.565, Florida Statutes (2018), provides the sentencing powers of the circuit court when a juvenile has been prosecuted in adult court and found guilty of a crime. § 985.565, Fla. Stat. (2018). The trial court has the option of imposing juvenile sanctions as an alternative to adult sanctions. § 985.565(1)(a), Fla. Stat. (2018).

If juvenile sanctions are initially imposed, but it is later determined that the sanctions are "unsuitable," section 985.565(4)(c) states that the trial court "may revoke the previous adjudication, impose an adjudication of guilt, and impose any sentence which it may lawfully impose, giving credit for all time spent by the child in the department." § 985.565(4)(c), Fla. Stat. (2018). Section 985.565(4)(c) also gives the grounds for determining that juvenile sanctions are unsuitable:

> a child may be found not suitable to a commitment program, community control program, or treatment program . . . if the child commits a new violation of law while under juvenile sanctions, if the child commits any other violation of the conditions of juvenile sanctions, or if the child's actions are otherwise determined by the court to demonstrate a failure of juvenile sanctions.

*Id.* The statute provides that the process for determining whether juvenile sanctions are unsuitable begins with the DJJ sending the sentencing court "a written report outlining the basis for its objections to the juvenile

sanction and shall simultaneously provide a copy of the report to the state attorney and the defense counsel." *Id.* It is also the DJJ's responsibility to schedule a hearing within thirty days after sending the report for the trial court to determine if juvenile sanctions are unsuitable. *Id.*

The Third District has noted the lack of guidance "regarding the scope, parameters and due process requirements of either: (i) [the] DJJ's 'written report outlining the basis for its objections to the juvenile sanction,' or (ii) the resulting disposition hearing to determine whether juvenile sanctions are suitable." *Brown*, 260 So. 3d at 1105 (quoting § 985.565(4)(c), Fla. Stat.). However, because juvenile sanction revocation proceedings pursuant to section 985.565(4)(c) contain analogous procedures to probation revocation procedures, the Third District reasoned there is "no sound basis for creating and developing a disparate body of due process law for juvenile revocation proceedings. This is true especially in light of the Florida Supreme Court's observation that the revocation of juvenile sanctions is an 'identical' situation to that of probation revocation." *Id.* at 1106 (quoting *Jones v. State*, 336 So. 2d 1172, 1175 (Fla. 1976)).

*Brown* is similar to this case in several ways. The defendant was charged as an adult but was subjected to juvenile sanctions. *Id.* at 1102. The charging document was the DJJ's affidavit, which the Third District reasoned was the statutorily required "written report" of the DJJ "outlining the basis" for seeking "revocation of Brown's juvenile sanctions – to determine what exactly [the] DJJ alleged as the basis for seeking revocation of Brown's juvenile sanctions." *Id.* at 1106. The only ground asserted in the DJJ's charging document that Brown was not suitable for juvenile sanctions was an allegation of a new crime. *Id.* There were no factual allegations that *Brown* violated some other condition associated with his juvenile sanction or that the juvenile sanctions were not "otherwise" determined to have failed. *Id.*

Likewise, in the instant case, the DJJ's affidavit asserted that Appellant was unsuitable for juvenile sanctions because he committed a theft in Georgia. The affidavit did not allege Appellant violated some other condition or that the juvenile sanctions were "otherwise" determined to have failed. Notably, however, this case differs from *Brown* because, there, the evidence at the unsuitability hearing was insufficient to prove the new law violation by a preponderance of the evidence. *Id.* at 1107. Additionally, in *Brown*, "the trial court focused not on the actual charges in the DJJ affidavit, but rather, on Brown's history of conduct while under DJJ supervision." *Id.* at 1106. In contrast, the trial court here focused on proof of the new crime (which was legally sufficient) *in addition to* Appellant's prior adjudications and supervision.

5

We note that the Third District observed in *Brown* that evidence of prior record and history of DJJ supervision would have been proper, if the DJJ had alleged that Brown's pattern of conduct demonstrated a failure of juvenile sanctions. *Id.* The court also observed that "the trial court could have revoked Brown's juvenile sanctions and imposed adult sanctions if the State proved that Brown had committed the offense in [the] DJJ's charging document." *Id.* at 1106–07. However, the Third District reversed because "[g]iven the one-dimensional allegation within [the] DJJ's charging document, due process required that the disposition hearing, and evidence admitted at that hearing, should have been limited to whether Brown, by a preponderance of the evidence, committed the violation of law alleged in the charging document." *Id.* at 1106.

The State contends that we should affirm on this issue because: (1) it was not preserved; (2) the trial court did not make comments about Appellant's criminal adjudications and supervision history until *after* it commented that it found that there was sufficient proof Appellant committed a new crime; and (3) there was no fundamental error or due process violation by the trial court in considering Appellant's prior adjudications and supervision history when determining whether to revoke juvenile sanctions.

We agree the issue was not preserved; however, we recognize that "revoking an individual's probation for conduct not alleged in the charging document deprives the individual of due process and constitutes fundamental error." *Wells v. State*, 60 So. 3d 551, 553 (Fla. 1st DCA 2011); *Ray v. State*, 855 So. 2d 1260, 1261 (Fla. 4th DCA 2003) (due process was violated by acceptance of violation of probation pleas which included a stipulation of a new law violation that was not contained in the affidavit of violation). Because it is clear the trial court discussed Appellant's prior adjudications and supervision history *before* announcing its determination that juvenile sanctions were unsuitable for Appellant, we review the matter for fundamental error as a due process violation.

There is no dispute that Appellant was not put on notice that the trial court would consider any ground for determining whether juvenile sanctions were unsuitable other than the alleged new theft crime. Although the State seemingly attempts to argue that the trial court's consideration of prior adjudications and supervision history was more for purposes of sentencing because the trial court did not discuss those factors until after it concluded the State sufficiently proved Appellant committed a new crime while on supervision, we reject the argument because the trial court violated due process.

6

During argument on an evidentiary objection raised by Appellant, the State agreed with Appellant that consideration of Appellant's prior record was relevant to the issue of whether Appellant should be declared a danger, and it was not relevant to whether juvenile sanctions were unsuitable (presumably because the State recognized there was only one ground alleged in the affidavit). The State more than once urged the trial court to first conduct the suitability hearing and determine if a violation occurred and if juvenile sanctions were unsuitable before considering evidence to determine whether Appellant was a danger and other matters appropriate for resentencing. Despite the State's urging, the trial court wanted to do everything at one time and insisted on multiple occasions that counsel ask all the questions needed for both the unsuitability determination and sentencing as each witness testified. The trial court failed to recognize that the process under section 985.565(4)(c), similar to probation violation hearings, is a sequential three step process, where the trial court has to decide: (1) did Appellant willfully commit a substantive violation of supervision conditions; (2) if so, should probation supervision be revoked; and (3) if probation supervision is revoked, what is the appropriate sentence.

Because the trial court blurred the process by mixing evidence for the different determinations, the trial court's analysis became flawed. A review of the transcript reveals the following sequence of oral determinations by the trial court: (1) Appellant committed a new crime while on DJJ supervision; (2) Appellant was a danger; and (3) juvenile sanctions were unsuitable. While it is true, as the State argues on appeal, that the trial court discussed the evidence establishing that Appellant committed a new crime before discussing Appellant's prior record, our review of the record compels us to conclude that the trial court was equally, if not more, concerned about Appellant's escalating criminal record and use of weapons during the prior offenses. Thus, it appears the trial court violated Appellant's due process rights and committed fundamental error in determining that Appellant's juvenile sanctions were unsuitable and should be revoked. *Ray*, 855 So. 2d at 1261; *Wells*, 60 So. 3d at 553.

We also find it significant that immediately after closing arguments, the first statement announced by the trial court was: "Any reason I should not impose sentencing at this time?" The State said, "No, your Honor," *but no response was solicited from Appellant's counsel*. Instead, the trial court immediately launched into its analysis and findings. The repeated insistence of the trial court to mix evidence relevant to the suitability determination with evidence relevant to the danger determination and sentencing, coupled with the lack of compliance to assure both sides were

ready to proceed with sentencing, demonstrates not only a lack of due process regarding notice of issues to be tried, but also a lack of due process regarding impartiality and an overemphasis on expediency. For that reason, we reverse and remand for further proceedings before a different judge.

*Violent Felony Offender of Special Concern Designation*

Appellant argues that the trial court misapplied the law when it conducted a danger hearing and designated him a VFOSC. Because our analysis focuses on statutory interpretation, our review is de novo. *Robinson*, 205 So. 3d at 590.

Section 948.06(8)(b), Florida Statutes (2018), defines a "violent felony offender of special concern" as including "a person who is on . . . [f]elony probation or community control related to the commission of a qualifying offense committed on or after the effective date of this act[.]" § 948.06(8)(b)1., Fla. Stat. (2018). Section 948.06(8)(e) states in part:

> (e) If the court, after conducting the hearing [regarding a violation of supervision conditions], determines that a violent felony offender of special concern has committed a violation of probation or community control other than a failure to pay costs, fines, or restitution, the court shall:
>
> 1. Make written findings as to whether or not the violent felony offender of special concern poses a danger to the community.

§ 948.06(8)(e)1., Fla. Stat. (2018). The statute also lists the factors used in determining if an offender is a danger to the community. § 948.06(8)(e)1.a.–e., Fla. Stat. (2018).

There is no dispute that Appellant was being supervised by the DJJ for a felony that was a qualifying offense as defined in section 948.06(8). However, we agree with Appellant's argument that section 948.06(8) designating an offender as a VFOSC applies only to individuals who were on adult felony probation or community control before a violation of supervision occurred, and it does not apply to juveniles sentenced in adult court to juvenile sanctions pursuant to section 985.565. The view of this Court and the Fifth District that proceedings under section 985.565(4)(c) are comparable to violation of probation proceedings after adult sanctions are imposed at sentencing does not change the analysis. We rely on several statutory provisions in reaching our conclusion that a VFOSC designation does not apply to a juvenile prosecuted as an adult who

violates supervision conditions after juvenile sanctions are imposed by the adult court.

The beginning point for statutory interpretation is the plain meaning of words chosen by the Legislature in enacting a statute. *Jimenez v. State*, 246 So. 3d 219, 227 (Fla. 2018). As quoted above, a VFOSC is "a person who is on . . . [f]elony probation or community control." § 948.06(8)(b)1., Fla. Stat. Sections 948.01(1) and (3), Florida Statutes (2018), make clear that "[a]ny state court having original jurisdiction of criminal actions" may "place[] the defendant on probation or into community control for a felony," and it is the DOC, rather than the DJJ, that provides the supervision. § 948.01(1)(a), (3), Fla. Stat. (2018); *see also* § 948.10(1), Fla. Stat. (2018) ("The Department of Corrections shall develop and administer a community control program."). More significantly, section 949.01, Florida Statutes (2018), makes clear that the DOC and DJJ operate in different realms. § 949.01, Fla. Stat. (2018) ("Nothing in chapters 947–949 shall be construed to change or modify the law respecting parole and probation as administered by a circuit court exercising juvenile jurisdiction.").

Even more significant are statutory provisions governing conditional release. The DJJ witness in this case testified that Appellant was on conditional release after being released from commitment to the highest and most restrictive level of residential commitment in the juvenile system. Section 985.46(1)(a), Florida Statutes (2018), explains that "[c]onditional release is the care, treatment, help, supervision, and provision of transition-to-adulthood services to *juveniles released from residential commitment programs to promote rehabilitation and prevent recidivism.*" § 985.46(1)(a), Fla. Stat. (2018) (emphasis added). In contrast, section 947.1405(2), Florida Statutes (2018), provides:

(2) Any *inmate* who:

(a) Is convicted of a crime committed on or after October 1, 1988, and before January 1, 1994, and any *inmate* who is convicted of a crime committed on or after January 1, 1994, which crime is or was contained in category 1, category 2, category 3, or category 4 of *Rule 3.701 and Rule 3.988, Florida Rules of Criminal Procedure* (1993), and who has served at least one prior felony commitment at a state or federal correctional institution;

. . . .

9

shall, upon reaching the tentative release date or provisional release date, whichever is earlier, as established by the Department of Corrections, be released under supervision subject to specified terms and conditions, including payment of the cost of supervision pursuant to s. 948.09.

§ 947.1405(2), Fla. Stat. (emphases added). Everyday language makes clear that "inmate" refers to a person in prison. It is commonly understood that juveniles committed to residential facilities are not "inmates."

The words chosen by the Legislature in the statutes discussed above demonstrate that a VFOSC designation applies to a person on felony probation or community control supervised by the DOC who meets certain criteria. Our research reveals no language in Chapters 947, 948, or 985 that suggests the Legislature intended that a VFOSC designation can apply to a juvenile prosecuted as an adult *prior to* the juvenile being placed on adult probation or community control supervised by the DOC. Thus, the trial court erred in following the State's request to conduct a danger hearing and impose a VFOSC designation on Appellant.

*Conclusion*

Having determined that the trial court violated Appellant's due process rights when revoking the juvenile sanctions imposed by the original sentencing and erred by designating Appellant as a VFOSC, we reverse Appellant's convictions and sentences and his designation as a VFOSC. We remand the cases for further proceedings before a different judge.

*Affirmed in part, reversed in part, and remanded with instructions.*

WARNER and MAY, JJ., concur.

\*          \*          \*

**Not final until disposition of timely filed motion for rehearing.**

10